UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE & CASUALTY COMPANY,

    Plaintiffs,

vs.

ANGEL AMADO LAZO, M.D., ROBERTO
CARLOS GUTIERREZ, YAUL FERNANDEZ,
LIZBET GOMEZ, MEDICAL PAIN SOLUTION,
INC., and RG MEDICAL CENTER, INC.

    Defendants.
_____/

## COMPLAINT

Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company (collectively "State Farm" or the "State Farm Plaintiffs"), sue Angel Amado Lazo, M.D. ("Lazo"), Roberto Carlos Gutierrez ("Gutierrez"), Yaul Fernandez ("Fernandez"), Lizbet Gomez ("Gomez"), Medical Pain Solution, Inc. ("Medical Pain"), and RG Medical Center Inc. ("RG Medical") (Lazo, Gutierrez, Fernandez, Gomez, Medical Pain and RG Medical are collectively referred to from time to time as the "Defendants") and allege:

### Nature of the Case

1. The claims in this case arise out of a large scale insurance fraud scheme whereby Defendants used unlicensed medical clinics to unlawfully obtain nearly $900,000 in Personal Injury Protection insurance benefits ("PIP benefits") from State Farm.

2. In order to avoid mandatory licensing requirements and oversight from the State of Florida, Lazo, a licensed medical doctor, falsely certified to the Florida Agency for Health

Care Administration ("AHCA") that he was and remains the sole owner of two medical clinics known as Medical Pain Solutions and RG Medical Center. In fact, the Medical Pain Solutions clinic is actually wholly owned and operated by Defendants Gutierrez, Fernandez, and Gomez, unlicensed individuals who are responsible for Medical Pain's day-to-day operations and receive more than 50% of the income generated by the clinic. Similarly, the RG Medical clinic is actually owned and operated by Gutierrez, an unlicensed individual, who is responsible for RG Medical's day-to-day operations. Lazo did not incorporate Medical Pain or RG Medical, does not own the equipment at the clinics, does not supervise the employees at the clinics, does not manage the clinic's operations, and receives less remuneration from the clinics than most of its "employees."

3. As set forth more fully below, because the Medical Pain and RG Medical clinics are not properly licensed under Florida law, the health care services for which the Defendants obtained PIP benefits from State Farm were not lawfully provided because: (a) the subject clinics were not licensed as required by Florida law, (b) the Defendants (including Gomez and Fernandez, lay persons, and Gutierrez, an unlicensed medical doctor) acted in concert to intentionally circumvent Florida's mandatory clinic licensing requirements, and (c) these unlicensed persons (rather than a licensed healthcare practitioner) were the true owners and operators of the subject clinics.

4. As a result, State Farm seeks to recover the amounts it paid to the Defendants based upon the doctrine of unjust enrichment. State Farm further seeks a judgment declaring that State Farm is not obligated to pay any of the Defendants' invoices for PIP benefits, to the extent they remain unpaid, because the health care services were not "lawfully provided," which is a condition precedent to seeking or obtaining PIP benefits under Florida law. § 627.736(1)(a), Fla.

Stat. (stating that, under Florida's Vehicle No-Fault Law, reimbursement shall be provided "only for [such services and care] that are *lawfully provided, supervised, ordered, or prescribed* by a physician licensed under chapter 458 or chapter 459…") (emphasis added).

### The Parties

5. State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company are each corporations organized under the laws of Illinois with their principal places of business in Illinois. State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company are, therefore, citizens of the State of Illinois. Both companies are property and casualty insurers licensed to engage in the issuance of automobile insurance policies. They are authorized to conduct business in the State of Florida as foreign corporations and are doing business in Miami-Dade County, Florida. Both companies made insurance payments to, or for the benefit of, Medical Pain and RG Medical under the belief that the subject health care services billed for by the Defendants were "lawfully provided" as required by Florida law.

6. Defendant Lazo is a citizen of Florida and resides in Miami-Dade County. At all relevant times, Lazo was a Florida licensed physician who agreed to be listed as the supposed sole owner of Medical Pain and RG Medical (as well as several other clinics). As set forth more fully below, Lazo, who is not the actual sole owner of these clinics, was held out to the public as owner of these clinics as a front for other laypersons to own, operate, and profit from these clinics by unlawfully obtaining PIP benefits from State Farm and other insurers without obtaining mandatory licensing from AHCA as required by Florida law.

7. Defendant Medical Pain is a Florida corporation with its principal place of business located at 45 Ponce de Leon Blvd., Miami, Florida 33135. Medical Pain is, therefore, a

citizen of the State of Florida. Medical Pain is one of the medical clinics for which Lazo represented himself to be the sole owner, but which was, in fact, actually owned and operated by unlicensed laypersons. Those unlicensed laypersons are Defendants Gutierrez, Fernandez and Gomez.

8. Defendant RG Medical is a Florida corporation with its principal place of business located at 8080 West Flagler, Suite 2B, Miami, Florida 33144. RG Medical is, therefore, a citizen of the State of Florida. RG Medical is another one of the medical clinics for which Lazo represented himself to be the sole owner, but which was, in fact, actually owned and operated by an unlicensed individual, Defendant Gutierrez.

9. Defendant Gutierrez is a citizen of the State of Florida and resides in Miami-Dade County. As set forth more fully below, Gutierrez is the true owner and operator of RG Medical and is one of the true owners and operators of Medical Pain, but concealed such fact for the purpose of unlawfully obtaining payments from State Farm and other insurers without obtaining mandatory licensing from the AHCA as required by Florida law.

10. Defendant Fernandez is a citizen of the State of Florida and resides in Miami-Dade County. As set forth more fully below, Fernandez is one of the true owners and operators of Medical Pain, but concealed such fact for the purpose of unlawfully obtaining payments from State Farm and other insurers without obtaining mandatory licensing from the AHCA as required by Florida law.

11. Defendant Gomez is a citizen of the State of Florida and resides in Miami-Dade County. As set forth more fully below, Gomez is one of the true owners and operators of Medical Pain, but concealed such fact from the public for the purpose of unlawfully obtaining payments from State Farm and other insurers without obtaining mandatory licensing from the

AHCA as required by Florida law.

## Jurisdiction and Venue

12.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.  The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the State Farm Plaintiffs' claims to the extent they are not encompassed with the Court's jurisdiction under 28 U.S.C. § 1332.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to State Farm's claims occurred in this judicial district, Defendants reside and/or do business in this judicial district, and the conduct of the Defendants has occurred in this judicial district.

## Facts Common to All Counts

### *The Health Care Clinic Act ("HCCA")*
### *§§ 400.990 et seq., Fla. Stat.*

14.     In 2003, the Florida Legislature enacted the Health Care Clinic Act ("HCCA"), §§ 400.990 *et seq.*, Fla. Stat., which requires each clinic to obtain a license from AHCA. § 400.991, Fla. Stat.  The HCCA's enactment followed the Florida Legislature's finding that "the regulation of health care clinics must be strengthened to prevent significant cost and harm to consumers."  § 400.990(2), Fla. Stat.  The express purpose of the HCCA "is to provide for the licensure, establishment, and enforcement of basic standards for health care clinics and to provide administrative oversight by [AHCA]." *Id.*

15.     An exemption to the licensing requirements of the HCCA can be obtained pursuant to § 400.9905(4)(g), Fla. Stat., if a licensed healthcare practitioner (such as a physician) is the sole owner of the clinic.  Specifically, an exemption is allowable if a clinic is "wholly

owned by one or more licensed health care practitioners," which can include one or more physicians. § 400.9905(g), Fla. Stat.  However, that ownership-based exception applies only "so long as one of the owners who is a licensed health care practitioner is *supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws*." *Id.* (emphasis added).  As a result, the ownership-based exemption does not apply when a licensed healthcare practitioner fails to supervise the clinic's business activities or fails to be legally responsible for compliance with all federal and state laws, even if that healthcare practitioner purports to be the sole owner of the corporate stock of the clinic.

### *The Health Care Licensing Procedures Act*
### *§§ 408.801 et seq., Fla. Stat.  (the "Licensing Procedures Act")*

16. The HCCA also incorporates the licensure requirements of the Health Care Licensing Procedures Act, §§ 408.801 *et seq.*, Fla. Stat.  (the "Licensing Procedures Act")  Similar to the HCCA, the Licensing Procedure Act recognizes that "[u]nlicensed activity constitutes harm that materially affects the health, safety, and welfare of clients." § 408.812(2), Fla. Stat.

17. Accordingly, the Licensing Procedure Act provides strict penalties for unlicensed activity.  Anyone who engages in unlicensed activity under § 408.812 of that Act commits a felony of the third degree, and each day of continued operation is a separate offense. § 400.993, Fla. Stat.

### *Lazo's Involvement in Multiple License Circumvention Schemes*

18. After the enactment of the HCCA, Lazo, with the assistance of several unlicensed laypersons, became involved simultaneously in several license circumvention schemes.

19. Currently, Lazo is listed as the purported "owner" of Medical Pain and RG Medical.  He is also listed as a purported "owner," "medical director" or employee of other

6

clinics in South Florida.

20. Medical Pain and RG Medical have received nearly $900,000 in PIP benefits from the State Farm Plaintiffs to which they were not lawfully entitled. Medical Pain and RG Medical also have outstanding invoices to the State Farm Plaintiffs exceeding $139,000 for unlawful health care services that they purportedly provided to State Farm insureds.

21. Due to the substantial patient, claims, and billing volumes of all these clinics, Lazo (a 78 year old individual) could not and, upon information and belief, did not discharge his statutory obligations as a purported "owner" with respect to Medical Pain and RG Medical as required by Florida law. Rather, unlicensed individuals were the true or *de facto* owners and operators of these clinics as set forth in more detail below.

### *The Scheme Involving Medical Pain*

22. Lazo, Gutierrez, Fernandez, Gomez and Medical Pain acted in concert to violate, *inter alia*, the HCCA and the Licensing Procedure Act by engaging in a licensure circumvention scheme with respect to Medical Pain.

23. On November 30, 2009, AHCA received from Medical Pain an Application for Certificate of Exemption from Licensure as a Health Care Clinic which misrepresented that Lazo was the 100% owner of Medical Pain. A copy of Medical Pain's Application for Certificate of Exemption from Licensure as a Health Care Clinic is attached to the Complaint as Exhibit "A". The Application for Certificate of Exemption signed by Lazo for Medical Pain states:

> The undersigned **health care practitioner** is one of the owners of a financial interest in the licensee and supervises the business activities and is legally responsible for the licensee's compliance with all federal and state laws. Upon personal information and knowledge, the undersigned affirms that the licensee meets each and every statutory requirement for the issuance of a certificate of exemption under this part and request the Agency for Health Care Administration rely upon this affirmation.

7

(emphasis in original).  *See* Exhibit "A".  AHCA thereafter issued Medical Pain a Health Care Clinic Certificate of Exemption, with an effective date of December 15, 2009.  A copy of the Health Care Clinic Certificate of Exemption for Medical Pain is attached to the Complaint as Exhibit "B".

24.     Although Medical Pain holds itself out as wholly owned by Lazo, Lazo is not an "owner" as contemplated by the licensure exemption set forth in the HCCA.  Lazo's purported "ownership" of Medical Pain is solely for the purpose of facilitating the scheme to violate the statutory ownership requirements for exempt clinics.

25.     Gutierrez, Fernandez, and Gomez are the true owners of Medical Pain because they (not Lazo) are responsible for Medical Pain's business activities and legal compliance, and on information and belief, they (not Lazo) retain substantially all of the profits generated by Medical Pain's unlawful activities.

26.     For example, Gutierrez, Fernandez and Gomez were paid at least $315,000 by Medical Pain from late 2009 to early 2011, whereas Lazo received only about $45,000 during that same time period.  Medical Pain distributed approximately seven times more money to Gutierrez, Fernandez and Gomez than to Lazo because Gutierrez, Fernandez and Gomez are the true owners of Medical Pain (not Lazo).

27.     Upon information and belief, Lazo also failed to meaningfully control or monitor Medical Pain's operations, legal compliance, or finances because he was not Medical Pain's true owner.  For example, and without limitation:

> a. Gutierrez was present at Medical Pain on a recurrent basis and manages all of its operations, but Lazo has only visited Medical Pain a few times since its inception;
>
> b. Gomez and Fernandez were signatories on Medical Pain's bank accounts, and Fernandez signed most of the checks drawn on Medical

    Pain's bank account;

  c. Numerous "Loan Payments" were made to individuals and entities other than Lazo, including Gutierrez, Fernandez, and entities controlled by Gomez; and

  d. A large percentage of Medical Pain's expenses appear to be for personal goods and services not reasonably associated with the operation of a legitimate clinic.

28. Upon information and belief, Lazo and Medical Pain have permitted Gutierrez, Fernandez, and Gomez to exercise routine and continuous control over the following at Medical Pain:

  a. the selection of the course of treatment for patients, the procedures or materials to be used as part of such course of treatment, and the manner in which such course of treatment is carried out by the licensee; and

  b. patient records.

29. Medical Pain, Lazo, Gutierrez, Fernandez, and Gomez actively concealed their license circumvention scheme from State Farm which caused and induced State Farm to pay substantial PIP benefits to Medical Pain for medical services allegedly rendered on behalf of State Farm's insureds. The State Farm Plaintiffs have paid to Medical Pain at least $504,375 for these unlawfully provided services between January 2010 and December 2014, as set forth in the charts attached hereto as Exhibits "C" and "D".

30. In addition to the foregoing payments of PIP benefits made to Medical Pain, Medical Pain has also billed the State Farm Plaintiffs at least $78,122 since December 2009 for medical treatments allegedly rendered to State Farm insureds that have not been paid as reflected in the charts attached hereto as Exhibits "E" and "F".

### *The Scheme Involving RG Medical*

31. Lazo, Gutierrez, and RG Medical acted in concert to violate, *inter alia*, the HCCA

9

and the Licensing Procedure Act by engaging in a licensure circumvention scheme with respect to RG Medical.

32.     On February 24, 2010, AHCA received from RG Medical an Application for Certificate of Exemption from Licensure as a Health Care Clinic which misrepresented that Lazo was the 100% owner of RG Medical.  A copy of RG Medical's Application for Certificate of Exemption from Licensure as a Health Care Clinic is attached to the Complaint as Exhibit "G". The Certificate of Exemption Form signed by Lazo for RG Medical states:

> The undersigned health care practitioner is one of the owners of a financial interest in the applicant and supervises the business activities and is legally responsible for the applicant's compliance with all federal and state laws.  Upon personal information and knowledge, the undersigned affirms that the applicant meets each and every statutory requirement for the issuance of a certificate of exemption under this part and requests that the Agency for Health Care Administration rely upon this affirmation.

*See* Exhibit "G".  AHCA thereafter issued RG Medical a Health Care Clinic Certificate of Exemption, with an effective date of April 21, 2010.  A copy of the Health Care Clinic Certificate of Exemption for RG Medical is attached to the Complaint as Exhibit "H".

33.     Although RG Medical holds itself out as wholly owned by Lazo, Lazo is not an "owner" as contemplated by the licensure exemption set forth in the HCCA.  Lazo's purported "ownership" of RG Medical is solely for the purpose of avoiding mandatory clinic licensing requirements under Florida law.

34.     Gutierrez is the true owner of RG Medical, because he (not Lazo) is responsible for RG Medical's business activities and legal compliance, and, on information and belief, Gutierrez (not Lazo) retains a disproportionate amount of the profits generated by RG Medical's unlawful activities.

35.     Gutierrez initially incorporated RG Medical and paid all the start-up costs for the

clinic. The "RG" in RG Medical actually stands for Roberto Gutierrez.

36. Lazo also failed to meaningfully control or monitor RG Medical's operations, legal compliance, or finances because he was not RG Medical's true owner. For example, and without limitation:

   a. Gutierrez manages all of RG Medical's operations;

   b. All of the equipment inside the RG Medical clinic is owned by Gutierrez;

   c. Gutierrez's is a signatory to RG Medical's office lease and Gutierrez is the person who personally pays the rent for RG Medical;

   d. Gutierrez signed all the payroll checks for RG Medical; and

   e. Gutierrez signed all the CMS-1500 Forms for RG Medical.

37. Upon information and belief, Lazo and RG Medical have permitted Gutierrez, an unlicensed layperson, to exercise routine and continuous control over the following at this clinic:

   a. the selection of the course of treatment for patients, the procedures or materials to be used as part of such course of treatment, and the manner in which such course of treatment is carried out by the licensee;

   b. patient records;

   c. policies and decisions relating to pricing, credit, refunds, warranties, and advertising; and/or

   d. decisions relating to office personnel and hours of practice.

38. RG Medical, Lazo and Gutierrez actively concealed their license circumvention scheme from State Farm which caused and induced State Farm to pay substantial PIP benefits to RG Medical for medical services allegedly rendered on behalf of State Farm's insureds. The State Farm Plaintiffs have paid to RG Medical at least $375,859 for unlawful health care services that they purportedly provided between March 2010 and February 2015, as set forth in the charts

attached hereto as Exhibits "I" and "J".

39. In addition to the foregoing payment of PIP benefits to RG Medical, RG Medical has also billed the State Farm Plaintiffs at least $62,973 since September 2010 for medical treatments allegedly rendered to State Farm insureds that have not been paid as reflected in the charts attached hereto as Exhibit "K" and "L".

### *None of the Services Rendered by Medical Pain and RG Medical Were "Lawfully Provided" as Required by Florida Law*

40. Despite these unlawful license circumvention schemes, the Defendants submitted, or caused to be submitted, bills for reimbursement to State Farm on CMS-1500 forms which constitute representations that health care services were rendered to the subject patients and that such health care services were lawfully provided and that "the services listed [in the forms submitted to State Farm] were medically indicated and necessary to the health of this patient and were personally furnished by me [*i.e.*, Lazo] or my employee under my personal direction." *See, e.g.,* Exemplar CMS-1500 Form, attached hereto as Exhibit "M".

41. The CMS-1500 forms were submitted by or on behalf of the Defendants to State Farm for payment with corresponding records certified by Medical Pain and RG Medical to be true and correct.

42. To further the unlawful scheme, the physician license number of Lazo was placed upon the CMS-1500 forms to conceal the improper exemption obtained by Medical Pain and RG Medical.

43. In reliance upon the CMS-1500 forms, medical records, and invoices submitted by or on behalf of the Defendants, the State Farm Plaintiffs paid Medical Pain at least $504,375 in PIP benefits, as reflected in Exhibits "C" and "D".

44. Further, Medical Pain has submitted additional bills for PIP benefits to the State

12

Farm Plaintiffs totaling at least $78,122 for medical treatments allegedly rendered to State Farm insureds that have not yet been paid, as reflected in Exhibits "E" and "F".

45. In reliance upon the CMS-1500 forms, medical records, and invoices submitted by or on behalf of the Defendants, the State Farm Plaintiffs paid RG Medical at least $375,859 in PIP benefits, as reflected in Exhibits "I" and "J".

46. Further, RG Medical has submitted additional bills for PIP benefits to the State Farm Plaintiffs totaling at least $62,973 for medical treatments allegedly rendered to State Farm insureds that have not yet been paid, as reflected in Exhibits "K" and "L".

47. Section 627.736(1)(a), Fla. Stat., expressly states that reimbursement for PIP Benefits shall be provided "only for [such services] and care that are *lawfully provided, supervised, ordered, or prescribed* by a physician licensed under chapter 458 or chapter 459…." (emphasis supplied).

48. None of the health care services allegedly provided by Medical Pain and RG Medical for which State Farm was charged were "lawfully provided" because these clinics were not properly licensed under the HCCA and the Licensing Procedures Act.

49. As a result, State Farm is entitled to recover (a) all amounts paid to Medical Pain and RG Medical as set forth in Exhibits "C", "D", "I" and "J", (b) a declaratory judgment confirming that State Farm is not obligated to pay any of the unpaid amounts for which Medical Pain and RG Medical have billed State Farm as set forth in Exhibits "E", "F", "K" and "L", and (c) additional relief against the Defendants as requested below.

50. State Farm has retained the undersigned law firms as their legal counsel in this matter and is obligated to pay the undersigned firms a reasonable attorney's fee for their services and to reimburse the undersigned firms for all costs incurred or advanced.

51.     All conditions precedent to the filing of this Complaint have been performed, waived, excused, or otherwise satisfied.

## Count I

### Unjust Enrichment
### (as to Medical Pain, Lazo, Gutierrez, Fernandez and Gomez)

52.     State Farm incorporates, as if fully set forth herein, each and every allegation in paragraphs 1 through 51 above.

53.     State Farm conferred direct benefits on Medical Pain, Lazo, Gutierrez, Fernandez and Gomez by making payments to them, in the amounts listed in Exhibits "C" and "D", pursuant to false, illegal, and improper claims for PIP benefits for health care services that were not lawfully provided as prescribed by Florida law.

54.     Medical Pain, Lazo, Gutierrez, Fernandez and Gomez voluntarily accepted and retained these benefits from State Farm, despite their knowledge that the health care services purportedly rendered by them were not "lawfully provided" as required by Florida law.

55.     The retention by Medical Pain, Lazo, Gutierrez, Fernandez and Gomez of these benefits was and is wrongful and unjust because these monies were obtained from State Farm for purported health care services that were not lawfully provided under Florida law.

56.     State Farm has been damaged by the wrongful and unjust actions of Medical Pain, Lazo, Gutierrez, Fernandez and Gomez because State Farm would not have paid the amounts listed in Exhibits "C" and "D" if it had been known at the time that these payments were for alleged health care services not lawfully provided or reimbursable under Florida law.

57.     It would be unjust under these circumstances to allow Medical Pain, Lazo, Gutierrez, Fernandez and Gomez to retain these benefits despite their misconduct detailed above.

WHEREFORE, the State Farm Plaintiffs respectfully request the Court to enter judgment

in their favor and to award them damages, interest, and costs against Medical Pain, Lazo, Gutierrez, Fernandez and Gomez in an amount to be proven at trial, and to grant such other relief as the Court deems just and appropriate.

**Count II**

**Unjust Enrichment**
**(as to RG Medical, Lazo and Gutierrez)**

58. State Farm incorporates, as if fully set forth herein, each and every allegation in paragraphs 1 through 51 above.

59. State Farm conferred direct benefits on RG Medical, Lazo and Gutierrez by making payments to them, in the amounts listed in Exhibits "I" and "J", pursuant to false, illegal, and improper claims for PIP benefits for health care services that were not lawfully provided as prescribed by Florida law.

60. RG Medical, Lazo and Gutierrez voluntarily accepted and retained these benefits from State Farm, despite their knowledge that the health care services purportedly rendered by them were not "lawfully provided" as required by Florida law.

61. The retention by RG Medical, Lazo and Gutierrez of these benefits was and is wrongful and unjust because these monies were obtained from State Farm for purported health care services that were not lawfully provided under Florida law.

62. State Farm has been damaged by the wrongful and unjust actions of RG Medical, Lazo and Gutierrez because State Farm would not have paid the amounts listed in Exhibits "I" and "J" if it had been known at the time that these payments were for alleged health care services not lawfully provided or reimbursable under Florida law.

63. It would be unjust under these circumstances to allow RG Medical, Lazo and Gutierrez to retain these benefits despite their misconduct detailed above.

WHEREFORE, the State Farm Plaintiffs request the Court to enter judgment in their favor and to award them damages, interest, and costs against RG Medical, Lazo and Gutierrez in an amount to be proven at trial, and to grant such other relief as the Court deems just and appropriate.

### Count III

### Declaratory Relief Pursuant to 28 U.S.C. § 2201
(as to Medical Pain, Lazo, Gutierrez, Fernandez and Gomez)

64. State Farm incorporates, as if fully set forth herein, each and every allegation in paragraphs 1 through 51 above.

65. There is an actual case and controversy between State Farm, on the one hand, Medical Pain, Lazo, Gutierrez, Fernandez and Gomez, on the other, as to the bills and charges submitted by Medical Pain to the State Farm Plaintiffs which have not been paid and which are set forth in Exhibits "E" and "F".

66. Medical Pain, Lazo, Gutierrez, Fernandez and Gomez have engaged in an unlawful license circumvention scheme with respect to Medical Pain and the bills for health care services that they submitted to State Farm for payment of PIP benefits were and continue to be false, misleading, deceptive and unlawful.

67. As a result, none of the health care services for which Medical Pain, Lazo, Gutierrez, Fernandez and Gomez submitted bills to State Farm were "lawfully provided," which would have enabled Medical Pain to seek or obtain reimbursement for these purported services from State Farm or its insureds pursuant to § 627.736, Fla. Stat.

WHEREFORE, the State Farm Plaintiffs request the Court to enter judgment in their favor declaring that: (a) the State Farm Plaintiffs and their insureds are not obligated to pay any of the unpaid amounts set forth in Exhibits "E" and "F"; (b) the State Farm Plaintiffs and their

insureds are not obligated to pay any future bills for health care services that are rendered by Medical Pain to State Farm; and (c) granting such other and further relief as this Court deems just and proper.

## Count IV

### Declaratory Relief Pursuant to 28 U.S.C. § 2201
(as to RG Medical, Lazo and Gutierrez)

68.     State Farm incorporates, as if fully set forth herein, each and every allegation in paragraphs 1 through 51 above.

69.     There is an actual case and controversy between State Farm, on the one hand, RG Medical, Lazo and Gutierrez, on the other, as to the bills and charges submitted to State Farm by RG Medical which have not been paid and which are set forth in Exhibits "K" and "L".

70.     RG Medical, Lazo and Gutierrez have engaged in an unlawful license circumvention scheme with respect to RG Medical and the bills for health care services that they submitted to State Farm for payment of PIP benefits were and continue to be false, misleading, deceptive and unlawful.

71.     As a result, none of the health care services for which RG Medical, Lazo and Gutierrez submitted bills to State Farm were "lawfully provided," which would have enabled RG Medical to seek or obtain reimbursement for these purported services from State Farm or its insureds pursuant to § 627.736, Fla. Stat.

WHEREFORE, the State Farm Plaintiffs request the Court to enter judgment in their favor declaring that: (a) the State Farm Plaintiffs and their insureds are not obligated to pay any of the unpaid amounts set forth in Exhibits "K" and "L"; (b) the State Farm Plaintiffs and their insureds are not obligated to pay any future bills for health care services that are rendered by RG Medical to State Farm; and (c) granting such other and further relief as this Court deems just and

proper.

## JURY DEMAND

State Farm demands a trial by jury on issues so triable.

Dated:  April 27, 2015.

s/  Brian J. Stack
Brian J. Stack
Fla. Bar No. 476234
Email: bstack@stackfernandez.com
Sammy Epelbaum
Fla. Bar No. 0031524
Email:  sepelbaum@stackfernandez.com
**STACK FERNANDEZ ANDERSON
  & HARRIS, P.A.**
1001 Brickell Bay Drive, Suite 2650
Miami, Florida  33131
Tel. 305.371.0001
Fax. 305.371.0002

David I. Spector
Fla. Bar No. 86540
Email:  david.spector@akerman.com
**AKERMAN LLP**
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, Florida  33401
Tel. 561.653.5000
Fax. 561.659.6313

*Attorneys for Plaintiffs*